J. W. DIXON et al. v. E. J. STEWART et al.

*Action for Recovery of Land—Estoppel—Lease to One in Possession of Land—Practice.*

1. The doctrine of estoppel which prevents a tenant from denying his landlord's title to the leased premises, applies not only to those cases where the landlord himself having possession, delivers up that possession to the tenant, but also to those where one, being already in possession of land, agrees to assume the relation of tenant towards another who asserts title thereto, provided such agreement is not induced by fraud or mistake.

2. Inasmuch as the doctrine of estoppel, as applicable to tenant in possession, goes no further than to require the tenant to first surrender his possession before denying title of his landlord, it is recommended as important in cases where recovery of land is had under this doctrine, that the record should show the ground of the recovery, so that the judgment will not work another and more effective estoppel on the defendant.

Action for the recovery of land, tried at August Term, 1892, of MOORE Superior Court, before *Winston, J.*

There was evidence that tended to show that in 1873 the defendant Stewart had leased the land in controversy from one Lane, under whom the plaintiff claimed, and whose deed to plaintiff for the premises was in evidence without objection thereto. The evidence also tended to show that Stewart was in possession long prior to the year 1873. He

testified that he had never leased the land from Lane or the plaintiff, nor had he agreed to become their tenant, or hold for them ; that he was put in possession by one Moody forty or fifty years before the trial.   No deed was shown either to Moody or from Moody to the plaintiffs, or either of them. The defendants introduced a deed made to them by the Sheriff of Moore County, dated February 28, 1873, and covering the land in controversy.

The following is the report of his Honor's charge, and the exceptions thereto:

" The Court, among other things, charged the jury that the counsel on both sides have solemnly and very properly admitted that the title is out of the State.   You will hence not consider that branch of the case.   The plaintiff must recover on the strength of his own title.   The Judge here read the special requests to the jury, and charged them plainly that the question of color of title, under a paper title, did not arise in the case, and that in no aspect of the case could the plaintiff recover, unless the jury shall find from the evidence that the defendants are in possession of the land as tenants of the plaintiff.   That if the defendants entered into possession of the land as tenants of the plaintiff or of Lane, then the plaintiff is entitled to the possession of the land, unless the defendants have made it appear that they have had the land twenty years after that relation ended or after the last payment of rent.

" The Court here fully arrayed the testimony on both these heads, and again, after reading the special requests, added and charged that the plaintiff's case rested solely on the question of tenancy, and unless such relation was shown by the plaintiff to exist between him or them under whom he claimed and the defendants, he could not recover."

The defendants requested his Honor to charge the jury as follows:

"1. That if the defendant E. I Stewart went into possession of the land under a parol gift from A. S. Moody, and

remained in exclusive possession for forty years, this gives him a good title against the world." His Honor refused to charge the jury as requested, and the defendants excepted.

"2. That if the defendant E. I. Stewart went into possession of said land under a parol gift from A. S. Moody, and remained in the exclusive possession for forty years, this gives him a good title against anyone except A. S. Moody." His Honor refused the instruction, and the defendants excepted.

His Honor charged the jury that if the plaintiff, or those under whom he claims, have been in the open, notorious, continuous and adverse possession for seven years, under color of title, before this action was brought, and if the defendants were the tenants of the plaintiff, his title is perfect, and the plaintiff has shown no possession for seven years under color of title, and cannot recover unless the defendants were the tenants of Lane.

The defendants excepted to this part of the charge, upon the ground that there was no evidence to sustain it, and for the further reason that there was no evidence that either McNeill or Stewart was a tenant of J. I. Lane.

His Honor further charged the jury that if the defendants, or those under whom they claim, have at any time acquired the title to the lands in dispute by color of title or by adverse holding of the same for twenty-one years adversely, then the plaintiff cannot recover unless he shall establish in himself a complete title, acquired after the acquirement of such title, by showing that the defendants thereafter became the tenants of the plaintiff, or those under whom he claimed.

The defendants excepted to this part of the charge, upon the same grounds assigned to first part of charge, viz., that there was no evidence to support it.

His Honor further charged the jury that "if the defendants were the tenants of Lane, then the possession of the defendants is Lane's possession until twenty years after that rela-

tion ended and after the last payment of rent," reading from *The Code* and explaining the same.

The defendants excepted to this part of the charge, for the reason that there was no evidence to support it, and no evidence of any payment of rent.

His Honor further charged the jury that the plaintiff has shown no possession for seven years under color of title, as requested by defendants, adding "unless the jury shall find that the defendants were the tenants of Lane."

The defendants excepted to the latter part of this charge, upon the grounds that there was no evidence of the tenancy of the defendants.

His Honor further charged the jury "that the purchaser of Tyson's title at Sheriff's sale, and the holding under the Sheriff's deed, if exclusive, and seven years possession under said deed, gives the defendants a good title," as requested by defendants, adding "unless the purchasers at the Sheriff's sale were the tenants of Lane, as explained in the charge."

The defendants excepted to the latter clause of said charge, upon the grounds that there was no evidence that the said purchasers were the tenants of Lane.

There was judgment for the plaintiffs, and the defendants appealed.

*Messrs. J. C. Black* and *W. E. Murchison*, for plaintiffs.
*Messrs. J. W. Hinsdale, Strong & Strong* and *W. J. Adams*, for defendants (appellants).

BURWELL, J.: On the trial some exceptions were taken, as appears from the record, to the introduction of certain deeds by means of which the plaintiffs sought to show that the title to the land in controversy, which was conceded to be out of the State, had become vested in him. His Honor admitted these deeds in evidence over the objection of the defendants, but, upon consideration of them and of the plaintiffs' evidence

as to possession under them, he decided that the plaintiffs had failed to show by a complete chain of title, or by possession under the deeds introduced, a title in himself to the land "good against the world," and he so charged the jury, and told them, in effect, that plaintiff, having failed to establish a title in that way, could not recover unless he had established facts which constituted an estoppel on the defendants and prevented them from disputing his title, and had thus proved in himself a title good enough for his purposes in this action. This ruling renders it unnecessary to consider the exceptions mentioned above, for the evidence, though admitted, was afterwards declared to be of no effect.

The jury found that the plaintiffs did have a title good against the defendants by estoppel, and there being no exception to the admission of any of the testimony bearing upon this branch of the case, we have only to ascertain if the charge to the jury upon this subject was correct.

It is familiar learning that a tenant will not be allowed to deny that his landlord has title to the leased premises in an action by the latter against the former for possession or for rents, and this general rule has application, we think, both to those instances where the landlord himself having possession, delivered up that possession to the tenant, and also to those instances where one who is himself in the actual possession of land agrees to assume the relation of a tenant as to the land towards another who asserts some title to it, there being no proof that this agreement was induced by fraud or mistake.

Mr. Bigelow, in his work on Estoppel, page 527, says: "There has been some conflict upon the question whether the bare taking a lease of land of which the tenant was already in possession may estop him to deny his lessor's title. It is agreed in all the cases, as we have seen, that if the tenant was induced to take the lease by mistake, fraud or misrepresentation on the part of the lessor, he may dispute his title.

*  *  *  The conflict arises in cases in which there is a simple question growing solely out of prior possession and later acceptance of a lease by the same person.  In New York and Kentucky it is held that the estoppel prevails, while in California the contrary doctrine has been held in two recent cases upon great consideration.  But even in that State it is held that the estoppel arises if the tenant does not prove a paramount title either in himself or in some one under whom he claims."  And on page 534 the author continues: "The only room for the question raised in California is either in the case of an original lease, or when the attornment is made to a stranger to the title of the lessor.  In such a case, is bare possession in the tenant, without mistake, fraud or the like in the leasing or attornment, sufficient to remove the estoppel?  The landlord may still have changed his position, reasonably induced by the lessor's acceptance of a tenancy. There would then be the elements of an estoppel *in pais;* and without stopping longer than to refer to the fact that the doctrine that the act of the party against whom the estoppel is claimed must have been *wilful* in a literal sense, if it ever prevailed, has been overruled, it is enough to say that the case might present features quite as conclusive as those in the case of an estoppel of a tenant who has received possession from his landlord; for taking possession from a landlord is only one way in which a change of position may take place. It is immaterial what may be the nature or extent of the change, provided there has been a substantial change in fact, so that the landlord would be placed in a less advantageous position by allowing the denial of his title than he would have occupied had not the tenancy been created."

If we were to adopt the rule laid down in the case cited by defendants' counsel (*Franklin* v. *Merida*, 35 Cal., 558), which is set out in the foregoing quotation from Mr. Bigelow, as modified by the latter case referred to by him (*Holloway* v. *Galliac,* 47 Cal., 474), which rule is thus stated in the latter

case: "A tenant is estopped by a lease which he takes when in possession, unless he proves paramount title in himself or another under whom he claims"—the plaintiffs would not be helped, for they base their claim of title solely upon "adverse possession for forty-three years of the land in controversy," and also on "an adverse possession under color of title from February 20, 1873, to the commencement of this action." Under the charge of his Honor the verdict of the jury has a double effect. It establishes the fact that defendants held the land from 1873, the date of the alleged lease, as tenants of plaintiffs' vendor, and thus destroys defendants' claim of title by possession by establishing the fact that from 1873 the possession was not adverse. Hence, they proved no paramount title, and the estoppel would be left to work its effect.

But we think reason and the authorities sustain the rule which is approved by the eminent author quoted heretofore, and that the defendants were estopped in this action to deny the plaintiffs' title, if in 1873 the defendant Stewart was in the actual possession of the land, and agreed to become the tenant of plaintiffs' vendor. The defendant McNeill testified that he "never had any possession, except through Stewart." The jury find that Stewart was holding as tenant of plaintiffs' vendor. The salutary doctrine of estoppel requires that that possession shall be surrendered to the landlord before the tenant can set up a title adverse to him. The rule goes no further. After the tenant has surrendered possession he may turn upon his former landlord and assert a better title than his, if he has one. Hence, it may be important in cases where the recovery is had under this rule of practice, that the record should show the ground of the recovery, so that the judgment will not work another and more effective estoppel on the defendant.

We have not deemed it necessary to advert to the fact that his Honor, in one part of his charge, said that the defendants

CURTIS *v.* LUMBER COMPANY.

would be estopped *if they entered into the possession of the land as tenants* of the plaintiffs' vendor. The defendants contend that there is no evidence of such entry into possession, but that all the testimony shows that if the alleged lease was made and accepted by the defendant Stewart, it was made and accepted while he was in possession. We need not give this matter consideration, because we have decided that the estoppel works, even though the lessee was in possession at the time the lease was made and accepted.

We find no error, and the judgment is      Affirmed.

*Note.*—BURWELL, J.: The case on appeal states the date of the deed from J. J. Lane to plaintiff, under which he claims the land in controversy, as the 24th day of February, 1891, which is later than the date of the summons. No objection to this deed was taken on the trial on this account. We have caused a copy of this exhibit to be added to the record, and from it we learn that the date of the said deed is February 24, 1890, and thus it appears that, by a clerical error, 1891 was put for 1890.